Our next case is Patterson versus the Commissioner of the Social Security Administration. And Mr. Mays, good to see you again, sir. May it please the court, Danny Mays, attorney for the appellant Constance Patterson. I'm here today to represent Ms. Patterson on an appeal on a social security disability denial. Ms. Patterson had a consistent work history for many years and at the end of 2006, as a result of a progression primarily of her back condition, did file for social security disability benefits after having worked mainly in manual labor type jobs. The judge, in this case, denied and I did not represent the claimant at the administrative level. I took this case up. Judge, you're talking about the administrative law judge? Yes, the administrative law judge, I'm sorry, the administrative law judge denied the case and the prior attorney appealed this to the appeals council and that took over after the decision was upheld by the appeals council for an appeal to district court. And we make several arguments here and I just wanted to jump right into them. The first argument that we made was a failure of the judge to properly evaluate listing 12.05C. Okay. And as a threshold issue, you've got the issue of waiver there. I mean, because I tend to agree with you that this does fit into 12.05. I mean, there are just a lot of signals that suggest that it goes in that direction, but 12.05 was never explicitly raised by Ms. Patterson's counsel, was it? No, Your Honor. But I don't... Does that make a difference? I don't believe that there's a requirement, particularly, and she was represented, but I don't believe there's a requirement that the counsel raise specifically the issue at the administrative hearing in a case where there's clear evidence in the file. In other words, the regulations require that the administrative judge evaluate and consider all the evidence regardless of what the attorney or the counsel or the representative may or may not do. Okay. So you're saying the verbal IQ score of 66 was the red flag, the special ed courses in high school were a red flag? What else are you saying were the red flags that should have alerted the ALJ in this case? As you indicated, Your Honor, there was testimony at the hearing that she was in... The claimant was in special education through school. There was a psychological evaluation that's not contradicted by any evidence in the file that the claimant had an IQ score of 66. You're talking about Dr. Ritterstock? That's correct, Your Honor. And because there's no contradictory evidence to that and because those factors certainly, at least arguably, meet all the criteria for listing 12.05C, the judge is required under the regulations to evaluate that listing regardless of what the counsel does or does not do at the administrative hearing. Yes? Oh, I'm sorry. Please finish your sentence. I was going to say obviously it's preferable, you know, in any situation that the representative would bring forward those arguments, but the administrative judge clearly has an obligation under the federal regulations to consider the evidence if it's presented to fairly adjudicate the case for the claimant. That was just the thrust of my question, not that, in fact, ALJ did deal with 12.05 as appears to be required, but that the ALJ was never presented with that argument and given an opportunity to correct it, which is sort of the fundamental premise of underlying a requirement that a claim be raised below for Dr. Ritterstock. You don't think that affects our analysis here? I don't believe so, Your Honor, just because the federal regulations are pretty clear and there's also, you know, at least certainly at the district court level and the Fourth Circuit, a body of case law that supports the idea that you really do, the judge has to evaluate evidence of a listing even if that is not presented by the counsel. Do you have a particular regulation for us to look at in that regard? Your Honor, I can't cite it from memory, I apologize, I can't give you the regulation from memory, but I can't say that the, I do cite in my brief the regulations requiring the evaluation of the listings, but A regulation that requires consideration of the listings? Right, that's right. Well, didn't he say he considered all the listings? He said he considered listings 12.02. He did not specifically indicate he considered listing 12.05, Your Honor. Oh, he said something that was a broader statement than that. Yes, Your Honor. But he clearly doesn't go in and consider, at least my argument He doesn't mention 12.05. He doesn't mention 12.05 and he doesn't go in and, you know, he clearly, when you read the decision, I think it's pretty clear that because Dr. Ritterstock found that the sort of top line or headline diagnosis was borderline intellectual functioning, the judge sort of latched onto that. There was a state agency doctor, Dr. Horn, who basically recited Dr. Ritterstock's finding of the borderline intellectual functioning and sort of recited that. But if you look at the specifics of what Dr. Ritterstock found, in the verbal area, he did find him performing at the extremely low functioning level there, which is, which meets the requirements. In other words, it's not borderline. He did find basically intellectual disability in the verbal area. And of course, under the listing, you don't have to show intellectual disability overall. It can be in any of those subsections that the listing is specific about that. So if you're below 70 and meet the criteria for, say, the verbal area, then that's sufficient under the listing. And that's what Dr. Ritterstock found in the verbal area. And in fact, in the language or the reading 66 means you're disabled. Is that what you're saying? If it's a valid test, but now if you do have to have, you know, the preamble to listing 1205C and, you know, requires this, the deficits in adaptive functioning in the pre, you know, basically before age 22 in the developmental period. That's a relatively new addition to the listing that was added several years ago. But my argument is, you know, the finding of functional illiteracy, which presumably wouldn't be something that happened subsequent to childhood or, you know, the adult period, that would have been a lifelong condition in combination with the uncontradicted evidence of special education through school and no degree from high school. But don't we say, is this omission? Because the ALJ did not specifically mention 1205. Haven't we found that that omission not to necessarily be reversible error? Your Honor, if the judge merely omits, say, the specific criteria of the listing and then goes forward with an analysis that the court can review, I would agree that would be a difficult case to argue. The judge here, there's no analysis for the court to even review here in terms of listing 1205. You're saying he just recited the evidence? Yes, Your Honor. Like, there's no way to even determine if he, he doesn't contradict the IQ score. He doesn't have a problem with that. He doesn't say that he, he doesn't specifically make any finding that there was no deficits in adaptive functioning. He clearly accepts that there was an additional severe impairment. You know, he specifically accepted that in the decision. You know, the argument I think the U.S. Attorney or the Commissioner makes is that basically the judge latched onto this diagnosis of borderline intellectual functioning, and because there was a diagnosis of borderline intellectual functioning, you don't even get to an analysis of 1205. There's no need for it. But my argument is the listing clearly says that you don't have to, that it's in any of those sections. And in this area, it was in the verbal area, and Dr. Reersbach did very specifically find extreme deficits or extremely low level functioning in that verbal area. And also, I didn't mean to cut you off there. Tell us about this one percent, too, in Dr. Reersbach's evaluation, that she was one percent. She was in the lowest one percentile in terms of her reading ability. Sex comprehension. That's right. In several different areas. Which would be consistent with this 66. That's correct, Your Honor. Verbal IQ. That's right. If we agree with you, what do you propose that we do with the case? I ask for it to be remanded for further evaluation of the listing, and also, as we've focused mainly on the listing. You're not asking us to grant benefits or anything? I didn't in my brief. I mean, I... Well, I'm not asking you what you're asking. I want to know what you want. I want to know what you want. I don't believe there's contradicted evidence that she meets the listing here. So certainly if the court agrees with that, then it would be a remand for payment of benefits. Isn't the problem here in this case that the ALJ didn't conduct the analysis? So how do we have the confidence? It seems to me that that cuts against your position, asking for us to direct an award, because the real rub of this case, it seems to me, is that the ALJ didn't conduct the analysis, didn't look at 1205, didn't use the special technique, didn't do all of these things. It basically recited the evidence and reached a conclusion. And so why wouldn't we then ask the ALJ to do what he's supposed to do? I agree, Your Honor. That's why I asked for a remand in my brief. I do believe the court certainly has the discretion, if they find that there's no way on remand that a case or a substantial case could be made that the listing's not met, you could remand for payment of benefits. But because no analysis was performed here, I would concede that probably the wisest course of action is just to send it back. You want us to send it back. That's what I was trying to tie you down on that. Yes, Your Honor. That's what I asked for, and I think that would be the most appropriate remedy, to send it back for evaluation of that. I've just got a couple minutes. I did want to just very quickly get into a couple of other areas there that I brought up in my brief. One thing I wanted to point out very quickly is that under the medical vocational guidelines, if it is correct that Ms. Patterson is functionally illiterate, as the uncontradicted testing found, then she's disabled at age 50, which doesn't cover the entire period here, but it would have kicked in a few years after her alleged disability started. Because if you're limited to a range of light work or less, and you're functionally or you're medical vocational guidelines, you're disabled. Before you run out of time, tell us about the back problem, the disc problem, and how that plays into the analysis. I just wanted to very quickly touch on that, and that was the claimant's treating doctor, Dr. Affolukwe, had provided an opinion that clearly would meet the requirements of disability, indicating that Ms. Patterson would frequently be absent from work, that she would only be 30 minutes at a time on sitting, 15, I believe, on standing and walking. So those impairments, particularly the frequent absences from work and need for frequent breaks would prohibit work activity. The judge dismissed that on a finding that it wasn't supported by the evidence, and one thing we argued in our brief is that the judge really didn't give – it's certainly, obviously  – our argument here is basically that the judge didn't weigh the evidence. He focused on any negative findings. We go through in our brief a lot of positive findings. The fact that she went through, was on a lot of different medications, MRI showed severe degenerative disc disease in her lower back. The judge does mention that, but it's not sufficient to merely mention that there was an MRI showing severe degenerative disc disease in the lower back. The administrative judge should have explained why that wasn't sufficient to support the opinion. Well, what I'm looking at is the language of the required level of severity that talks about a valid verbal performance or full-scale IQ of 60 through 70 and a physical or other mental impairment. And I guess what I am asking you is, are you relying on the – to what extent are you relying on the back problems? Well, yes, Your Honor, and I don't think even the commissioner disputes that there's another severe impairment here. Yes, the judge found that she had degenerative disc disease as a severe impairment in the decision. So, there's not really any argument there that that criteria is met. Thank you, Your Honor. Thank you, Mr. Brady. Ms. Britano? May it please the Court. The standard of review in a Social Security case is that of substantial evidence. Whether substantial evidence supports the ALJ's decision and whether he correctly applied the law. This is the case here. Appellant Constance Patterson, despite her borderline intellectual functioning – What if they don't consider all the evidence? The ALJ – or this Court has previously stated that the ALJ is not required to specifically cite to every piece of the evidence in making his determination. What about the fact that – and the problem I have with this case is it doesn't seem to have been analyzed as it should have been analyzed, and what's the harm of just telling them to do it correctly? We have an ALJ who didn't consider the 12.05, notwithstanding her verbal IQ being 66, and then he didn't use the special techniques for analyzing the situation, so why wouldn't we send it back? Why wouldn't we want to, to get the best result? She may or may not win, but why wouldn't we have a lot more confidence in the result if he does it the way he's supposed to do it? Sending it back would not result in any different interpretation by the administrative law judge? It may not, but the question is – well, first of all, we don't know that. It may not, but he specifically, as Judge Keenan referenced, failed to follow the special technique. There are some – and I think he would concede that, would you not? The ALJ did not specifically adopt the findings of Dr. Horne? Or follow the special technique, or didn't go through 12.05. Wouldn't it be better for everyone, including the government, if he just fleshed out the analysis and connected the dots in the way that he was supposed to? Because we really can't necessarily know, unless your argument – and I didn't understand you to be going that far, I guess – is that you're saying it's harmless error because the evidence is overwhelming that she had the capacity that's considered – I'm not saying it's harmless, without understanding the analysis that underlies it. Sure. First, the government's position is that 12.02, rather than 12.05, was the appropriate listing here, based upon our diagnosis of borderline intellectual functioning. Pursuant to the DSM-IV, a borderline intellectual functioning and mental retardation, which was the appropriate name at the time of this case, are mutually exclusive diagnoses. The DSM notes that mental retardation will not be diagnosed if there are no significant deficits in adaptive functioning. Therefore, the ALJ, who looked at the diagnosis by Dr. Ritter-Spach, which noted borderline intellectual functioning rather than mental retardation, and the consideration of Dr. Ritter-Spach, a psychologist and an expert in Social Security, that 12.02 was the appropriate listing for the judge to consider, the ALJ then went forth and considered listing 12.02. He had no – Right. The 12.02 deals with mental diseases, doesn't it? I mean, schizophrenia, that kind of thing, when you look at the – you know, look at the content of that listing. Right. Organic mental disorders, it could be a host of different – Yeah. So, if he's looking at the wrong area, how do we have confidence in the result? Well, he was – first, he relied upon the expert – Right. But the expert also said 66 verbal. I mean, to me, that's just a giant red flag. Right. Well – And, you know, it reminds me of the – what was it? The Seventh Circuit's case, Barnett, or something like that, where the Seventh Circuit said if the record shows something that points the ALJ to a problem, the ALJ's got to follow up on it. Well, here, the consideration of the entire listing would not necessarily point to a 12.05. The entirety of listing 12.05 says mental retardation is defined as significant sub-average general intellectual functioning with deficits in adaptive functioning and an IQ score of 60 to 70 with the verbal performance or full scale and an additional severe mental or physical impairment. So, there's a number of different criteria that have to be met in order to meet that full listing. So, here, you've got the diagnosis of borderline intellectual functioning, which we would argue is different than significant sub-average general intellectual functioning. Indeed, it seems that Patterson is attempting to condense the first diagnostic criteria with the second criteria. The first part of the criteria says there needs to be significant sub-average general intellectual functioning and an IQ score of 60 to 70. So, if you don't have that general intellectual functioning in the first part, you don't meet the entire listing because Patterson is required to meet all of the elements of the listing. That means the entirety of the diagnostic criteria in addition to that second part. Isn't that why you've got a problem with cumulative error here because the ALJ didn't employ the special technique to analyze? When the ALJ simply recites the evidence but doesn't perform that analysis, and then you have the ALJ looking at the arguably wrong listing, isn't it the cumulative effect that undercuts our confidence in the end result here? Here, the fact that the ALJ did not explicitly adopt the findings of Dr. Horn is essentially a question of form. He discussed Dr. Horn's four findings, noting that she had mild difficulties in daily living, mild difficulties in social functioning, moderate restrictions in concentration and persistence or pace, and no episodes of decompensation of extended duration. And then went on to discuss all of the evidence that went to support those four findings by Dr. Horn. Here, the commissioner would argue that the fact that the ALJ did not explicitly adopt that is essentially harmless error. Are you arguing harmless error in this case or not? Yes, Your Honor, we are. You are arguing. Yes. We assert that the fact that they did not explicitly adopt the findings of Dr. Horn Which error is it that you're arguing is harmless? Are you just saying overall, if there's some error here, it's all harmless? Well, I would say, I would first... Which error are you conceding in order to argue harmless error? Well, first I would argue that the special technique to the extent that he did not explicitly adopt Dr. Horn's findings in the area of the four functions would be harmless because he goes on to discuss the remainder of the evidence that supports the four findings by Dr. Horn. We further assert that listing 12.02 was the proper listing to consider under the listings at step three. Why? Well, there's numerous reasons. If you had the verbal IQ score of 6 to 6, why is 12.02 the right one? I mean, you know, I don't know a lot about this. Obviously, I just started reading about it, but that just jumped out. Well, the reason here, there's a number of reasons why the ALJ properly considered 12.02. Well, why couldn't you consider both? I mean, if he was so in the groove on 12.02 and felt it really needed to be done, why wasn't the verbal IQ score 66, the big red flag that said you've got to consider 12.05 too? Well, 12.05 has a number of different requirements of the listing, and I would assert that because there are a number of other requirements that were not met, just the simple fact of one IQ score would not require the ALJ to necessarily go into a 12.05 analysis when there's a number of other factors. He knew that she was in special ed classes in high school. He knew that she got some sort of a certificate, but he wasn't sure really what that meant. He knew she got pregnant, so she definitely didn't finish her high school education. So why isn't that another factor that would point to, I better take a look at 12.05. This might be a 12.05 case. Well, there's a number of other factors which cut the opposite direction, which the ALJ acknowledged at page 14 and 15 in this discussion of the listings, where he noted that she had performed semi-skilled and skilled work as a sewer and a quilting machine operator, that she admitted that her absenteeism while she was working was not due to mental limitations, but rather because she was caring for her mother who had significant health problems. He noted that she had the ability to perform a number of activities, notably that she was able to cook, she was able to perform light house cleaning, she worked part-time during the relevant period as a house cleaner, she was able to attend church activities, she was able to tend to her personal care, she was able to drive. There were a number of other activities that would further point that 12.05 was not necessarily the listing that he needed to be pointed to, and in any event, even if 12.05 was the appropriate listing, there are a number of these activities which show that she would not be able to meet 12.05. Why should the appellate court be in a position of trying to shore up an opinion that is analytically deficient? There are a number of cases that come in here, and many of them you get a distinct feeling that they're so close, people maybe don't really want to work, as opposed to, you know, whether they're legitimately disabled, and of course we go with the ALJ, because the ALJ was there and the evidence supports it, but this is a different kind of case, it seems to me, because if analytically it wasn't done correctly, and this lady did try, obviously, she tried to live her life, she tried to work hard, she tried to do the right thing, why wouldn't we want to give her the benefit of a full analysis? I mean, why should the appellate court just say, no problem, you lose, even though it wasn't done right, there was lots of evidence here. Why do we want to be on record doing that, and why does the government want to be on record doing that, when, you know, she may lose going back, but why wouldn't you want the litigant to have the benefit of, where they're clearly not a malinger, or, you know, somebody who's trying to game the system? Right, well, here, as I stated, Patterson bears the burden at step three, and she's required to prove that she meets all of the required listings elements. She never asserted it below, when she made her application, she only asserted that she had back and leg problems, she never asserted during her testimony that she was so limited, she was represented by counsel, counsel never indicated that she was disabled pursuant to 12.05, the counsel was on notice, based upon the record, that the state agency psychologist was considering it under 12.02, he could have raised it at that point, the ALJ then went forward to consider it under 12.02, and here, in addition, as I had mentioned before, there's evidence showing that she would not meet 12.05 anyway, and in Cook v. Heckler, the standard was noted that the claimant has to show ample evidence that they would have met the listing, and we would suggest that this evidence is not ample, in fact, it's ample in the other direction, that she would not be able to meet the deficits adaptive functioning, especially where her borderline intellectual functioning is defined as such, where you would not have deficits in adaptive functioning. Did you raise your harmless error argument in your brief? We raised the harmless error argument, I believe, with respect to the special technique, but we did say that even if the 12.02 analysis was incorrect, that 12.05 would not be met, we did state that. Where does the ALJ discuss the impact of her mental impairment? The ALJ finds that she is able to perform unskilled work consistent with Dr. Horn's opinion. Right, but where does he talk about her mental impairment and the impact, not what she can do, but what she cannot do as a result of her impairment? At the listings analysis, he goes through all of what she can do, that she can maintain concentration. Right, but again, I think that's not the question. The question is, where does the ALJ talk about the impact, the negative impact, of the mental impairment? He discusses the negative impact at step three, when he concludes that the impact is that while she does have borderline intellectual functioning, she is still able to perform unskilled jobs, which... Well, that's again, what she can do. Where does he discuss what she cannot do as a result of the impairment, because it seems to me that's lacking in the analysis, and I'm just interested whether you can point us to something. He does note in that analysis that Dr. Ritter-Spack stated that she'd have some difficulties with the cognitive portions of the day-to-day functioning, and he does note that in the review of the evidence with Dr. Ritter-Spack, and then goes on after noting that she does have limitations in that regard, to find that she had the ability to perform unskilled work. One quick note, with respect to Dr. Othelukwe, we just assert that substantial evidence supports that portion of the opinion because, oh, I see I'm out of time, but I would like to thank the court and suggest that the court affirm the conditioner's decision, if you don't have any further questions. Thank you very much. Thank you. I appreciate it. Mr. Bays, you saved a couple of minutes. Thank you. I just wanted to respond to a few things that was raised there. First of all, this court, just last year, in the Mascio v. Colvin case, found that if a judge finds that there's moderate impairment in terms of concentration of attention, that that finding under the special technique has to be incorporated into the RFC, and also that just simply limiting the claimant to unskilled work is not sufficient to meet that. That impairment would suggest restrictions beyond just simply a limitation on unskilled work. The harmless error argument under Mascio simply would not apply here because, again, Dr. Horn found that there was moderate restrictions in that area, and the judge provided no basis whatsoever, in fact, relied on Dr. Horn's opinion and findings as the basis for his determination. The RFC includes no mental restriction. Even though the judge found that there was borderline intellectual functioning here, the judge at least accepted that much, the administrative judge at least accepted that much and accepted as a severe impairment in the decision that there was borderline intellectual capacity findings of the decision. There's an older case from the Fourth Circuit, Grant v. Schweiker, from 1983, I'll cite in my brief, and that case found that if borderline intellectual functioning is a non-exertional impairment that has to be addressed in the hypothetical question, and again, if there's no restriction for mental impairment at all in the RFC, I don't see how that could have been addressed in the question. So harmless error here, I believe, would not apply. I did want to go back and very quickly also address some of the listing arguments that were being made there. Do you think they ever raised harmless error before today? They did. In their brief, they did raise harmless error in the context of the special technique, as was indicated. But the other thing I wanted to mention in terms of, again, I think the key point on the court to understand is that the listing is very clear, and it appeared to me from what the attorney for the commissioner was stating there was that she's almost trying to add some additional requirement to the listing there that's not stated in the regulation, and that is that somehow we have to also show a general intellectual disability overall, and the listing is very clear that if you are at listing level in any of these subgroups, verbal, performance, or general IQ, and then you meet the other two requirements, which is an additional severe impairment, which they don't, they're not contesting that. They concede that there's an additional severe impairment here. The issue is whether or not there was evidence of deficits in adaptive functioning, and whether there's an IQ, a valid IQ score below 70. Those are the two things. The judge did not analyze this, and I believe the evidence is uncontradicted that those things exist. Thank you. Thank you, Mr. Mays. We appreciate it.
judges: Robert B. King, Allyson K. Duncan, Barbara Milano Keenan